1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN E. HALLER,

11            Plaintiff,                     No. CIV S-07-1204 EFB

12        vs.

13   MICHAEL J. ASTRUE,                      <u>ORDER</u>
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying plaintiff's application for Disability Insurance Benefits under Title II

18   of the Social Security Act ("Act").  For the reasons that follow, plaintiff's motion for summary

19   judgment is granted, and the Commissioner's cross-motion for summary judgment denied.  The

20   Clerk is directed to enter judgment for the plaintiff.

21   **I.  BACKGROUND**

22        Plaintiff, born June 18, 1958, applied for benefits on September 2, 2004.  Administrative

23   Record ("AR") 44-47.  Plaintiff alleged he was unable to work since October 1, 2002, due to

24   stress, bulging discs in lower back and neck, and a blood clot.  AR 30, 44, 91.  The application

25   was denied initially and upon reconsideration.  AR 30-41.

26   ////

On December 21, 2006, following a hearing before administrative law judge ("ALJ") L. Kalei Fong, plaintiff was found not disabled.[1]  AR 14-19.  The ALJ made the following findings:

> 1.    The disability insured status requirements of the Act were met on October 1, 2002, the date that the claimant stated he became unable to work, and continue to be met through the date of this decision.
>
> 2.    The claimant has not engaged in substantial gainful activity during the period at issue.
>
> 3.    The medical evidence establishes that the claimant has a lumbar strain, degenerative disc disease, venous insufficiency, and a non-specific anxiety disorder, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401, *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382, *et seq*.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

Appendix 1, Subpart P, Regulations No. 4.

4.      The claimant's allegations of "excess" pain and functional limitations are not fully credible for the reasons specified herein.

5.      The claimant retains the residual functional capacity to do the following:  1) sit for six hours in an eight-hour work day, 2) stand/walk for six hours in an eight-hour work day, and 3) lift and carry twenty pounds on an occasional basis and ten pounds on a frequent basis.  The claimant is only able to stoop and climb ladders/ropes/scaffolds on an occasional basis.  The claimant needs to take breaks every thirty minutes for one minute.  Additionally, the claimant has the following mental functioning impairments: 1) a mild to moderate impairment in his ability to maintain concentration, attention, persistence, and pace over time, 2) a mild impairment in his ability to associate with day-to-day work activity maintaining regular attendance, and 3) a mild impairment in his ability to adapt to the stressors common in a work environment (20 CFR 404.1545 and 416.945).

6.      The claimant is unable to perform his past relevant work as a construction worker II.

7.      The claimant is 48 years old, which is defined as a younger individual (20 CFR 404.1563 and 416.963).

8.      The claimant has a G.E.D., which is equivalent to a high school education (20 CFR 404.1564 and 46.964).

9.      The claimant does not have any acquired work skills, which are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568 and 416.968).

10.     Based on an exertional capacity for light work, and the claimant's age, education, and work experience, sections 404.1569 and 416.969, Regulations Nos. 4 and 16, and Rule 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11.     Although the claimant's limitations do not allow him to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the local economy, which he could perform.  According to vocational expert testimony, there are approximately 64,000/10,000 (national/state economy) parking lot attendant jobs, 250,000/50,000 fast-foods worker jobs (national/state economy), and

3

1                58,000/6,000 (national/state economy) car wash attendant
                jobs, which an individual with the claimant's limitations

2                 could perform.

3       12.     The claimant was not under a "disability," as defined in the
                Social Security Act, at any time through the date of this

4                 decision (20 CFR 404.1520(g) and 416.920(g)).

5 AR 17-19.

6      On April 20, 2007, the Appeals Council denied plaintiff's request for review, and the

7 ALJ's decision became the final decision of the Commissioner.  AR 5-7.

8 **II.  ISSUES PRESENTED**

9      In his motion for summary judgment, plaintiff alleges two errors in the Commissioner's

10 decision.  First, plaintiff alleges that the ALJ improperly discredited his testimony and third party

11 statements regarding the nature and extent of his pain and functional limitations.  Second,

12 plaintiff asserts that because his testimony was improperly rejected, the ALJ erred in relying on

13 vocational testimony that did not reflect his subjective symptoms and related limitations.

14 **III.  LEGAL STANDARDS**

15      The Commissioner's decision that a claimant is not disabled will be upheld if the findings

16 of fact are supported by substantial evidence in the record and the proper legal standards were

17 applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

18 *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

19 180 F.3d 1094, 1097 (9th Cir. 1999).

20      The findings of the Commissioner as to any fact, if supported by substantial evidence,

21 are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

22 more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

23 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

24 support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

25 *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

26 ////

1    "The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)

3    (citations omitted).  "Where the evidence is susceptible to more than one rational

4    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

6    **IV.  ANALYSIS**

7           Plaintiff's first argument is that the ALJ improperly discredited his testimony regarding

8    the nature and extent of his pain and functional limitations.

9           In evaluating whether subjective complaints are credible, the ALJ should first consider

10   objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

11   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

12   then may consider the nature of the symptoms alleged, including aggravating factors,

13   medication, treatment and functional restrictions.  *Id.* at 345-47.  The ALJ also may consider: (1)

14   the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

15   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

16   prescribed course of treatment, and (3) the applicant's daily activities.  *Orn v. Astrue*, 495 F.3d

17   625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

18          The ALJ determines whether a disability applicant is credible, and the court defers to the

19   ALJ's discretion if the ALJ used the proper process and provided proper reasons.  *See, e.g.,*

20   *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  "Without affirmative evidence showing that

21   the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony

22   must be clear and convincing."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th

23   Cir. 1999).

24          Here, the ALJ considered plaintiff's "excessive subjective complaints of body pain and

25   anxiety" and found them not fully credible.  AR 16.  The ALJ did not find that plaintiff was

26   malingering, but discredited his testimony for several reasons, none of which were clear and

5

1    convincing.

2         Plaintiff testified that the bulging discs in his neck and lower back cause him a lot of pain

3    and make it difficult for him to sleep and perform his daily living activities.  AR 248-49.  He

4    testified that the pain varies in intensity, and that some days it is so severe he has to lie in bed all

5    day.  AR 250.  He testified that, depending on the level of pain and the effectiveness of his

6    medication, he can sit for about fifteen to twenty minutes at a time, and can stand for about

7    fifteen minutes before he feels the need to sit or lie down.  AR 250-51.  He also testified that his

8    pain medication makes him sick and drowsy, and that his doctor had recently doubled it and was

9    considering prescribing methadone.[2]  AR 251, 253.  He testified that the blood clot in his right

10   leg causes pain and edema, and that this condition requires him to elevate his legs frequently.

11   AR 252, 257.  Plaintiff further testified that he lives alone and does his own laundry, dishes and

12   shopping, but that it takes him all day to complete those tasks.  AR 262-64.

13        This testimony was consistent with plaintiff's responses on a questionnaire regarding his

14   daily activities.  AR 64-72.  There, he indicated that some days he has to stay in bed due to pain,

15   and other days he tries his best to do his chores.  AR 64.  He indicated that he has trouble

16   dressing, cooking and doing other chores, depending on the level of pain he is experiencing.  AR

17   65-67.

18        Although the ALJ acknowledged that plaintiff had impairments "which could produce

19   some 'excess' symptoms," he discredited plaintiff's testimony regarding his limited daily

20   activities because "it is difficult to attribute [the alleged] degree of limitation to the claimant's

21   medical condition, as opposed to other reasons, in view of the relatively weak medical evidence

22   and other factors discussed in the decision."  AR 16.  The other factors are not identified.

23

24        [2]  The record shows that plaintiff took 500 mg of Vicodin throughout 2003, AR 138-149,
     and that he switched to Norco in 2004.  On October 15, 2004, his Norco dosage was doubled.
25   AR 131, 133.  Both drugs are brands name drugs containing hydrocodone, which is used to
     relieve moderate to severe pain.  *See* Physicians' Desk Reference, 110, 510, 3335 (62nd ed.
26   2008).

                                                          6

1    First, vague references to "other factors" and "other reasons" do not constitute clear and

2    convincing reasons for rejecting plaintiff's specific and detailed testimony.  It is unclear which

3    factors and reasons the ALJ was referring to, and as such, they are not sufficiently specific

4    reasons.  Further, the ALJ did not explain what he meant by "weak medical evidence."  While

5    the record is thin, it does contain records of plaintiff's continued treatment for pain in connection

6    with his degenerative disc disease and migraines, in addition to his anxiety disorder.  AR 122-67.

7    Although the record does not contain treatment notes from August 2005 through July 2006,

8    plaintiff explained at the hearing that his laborers' union insurance had expired and he could

9    only receive treatment through the Indian rancheria clinic during that time.  AR 260.  He testified

10   that the rancheria doctors did not require him to come in for visits, and that they renewed his

11   prescriptions every month over the telephone during that period.  AR 260-61.  He further

12   testified that he was scared to go there based on what he perceived to be the poor quality of care.

13   He explained that on one occasion the medical personnel massaged the clot in his leg all the way

14   up to his thigh.  AR 257-62.  Plaintiff also described trying to get covered by a doctor he saw

15   during an emergency room visit, but explained that the doctor had "no room" for him.  AR 258.

16   In his written decision, the ALJ noted the gap in treatment, and commented that

17   "[c]ertainly, if the claimant suffered from disabling symptoms, he would have been receiving

18   ongoing treatment since his alleged onset date.  His failure to seek ongoing treatment belies his

19   complaints."  AR 16.  This completely contradicts the ALJ's comments at the hearing.

20   There, the ALJ commented that he could see plaintiff was experiencing difficulties in

21   connection with his neck and back pain.  AR 250, 273.  He said he did not think those

22   impairments had been "properly addressed treatment-wise," and that there was probably "a lot

23   more to be done," noting that an MRI had been scheduled the following week.  AR 273, 255-56.

24   The ALJ also commented on the gap in plaintiff's treatment, stating that he "thought plaintiff

25   reasonably explained it."  *Id.*  He also stated that plaintiff had a good work history, that he could

26   see he was in pain, and that "[t]his man is credible to me."  *Id.* 273.  The contrast between these

7

1  comments and the written decision undermines the ALJ's reasons for rejecting plaintiff's

2  testimony, and render them less than convincing.

3      An ALJ's credibility determination is entitled to deference.  *See, e.g., Saelee*, 94 F.3d at

4  522.  But it is difficult to discern which finding to take seriously; the one stated on the record at

5  the end of the hearing that the plaintiff's testimony was credible, or the other stated in the written

6  decision signed nearly four months later stating that the testimony was not credible.  The

7  problem here is not only in choosing which credibility determination the court should defer, but

8  the clear suggestion that there is no convincing reason for whichever finding the ALJ ultimately

9  intended.

10      The ALJ's other reason for discrediting plaintiff are similarly unconvincing.  The ALJ

11  also rejected plaintiff's testimony about his limited daily activities because they "could not be

12  objectively verified with any reasonable degree of certainty."  AR 16.  This is a novel reason for

13  rejecting testimony about daily activities and appears to impose an extremely heavy, and

14  unwarranted, burden on the plaintiff.  The ALJ cites no authority suggesting that a claimant is

15  required to offer objective verification, to a reasonable degree of certainty, regarding his

16  activities of daily living.  Moreover, the ALJ failed even to discuss the other evidence in the

17  record that corroborated plaintiff's statements.  Plaintiff's mother, Wanda Haller, completed a

18  questionnaire regarding her son's functional limitations.  Although her statements were

19  somewhat generalized, she indicated that she saw plaintiff at least once a week.  AR 73-77.  She

20  indicated that plaintiff has trouble sleeping due to pain, that he has episodes where he is in so

21  much pain he is confined to bed and can hardly do anything, and that his daily activities, such as

22  cooking and other chores, take him a long time to complete.  *Id.*  These are entirely consistent

23  with plaintiff's own statements, and the ALJ erred by failing to discuss them.

24      "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

25  ability to work is competent evidence, and therefore cannot be disregarded without comment."

26  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Dodrill v. Shalala*, 12 F.3d 915,

918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  *Dodrill*, 12 F.3d at 919.  Where the ALJ fails to discuss competent lay testimony that is favorable to plaintiff, the error is harmless only if the court can confidently conclude that no reasonable ALJ, when fully crediting testimony, could have reached a different disability determination.  *Stout v. Commissioner SSA*, 454 F.3d 1050, 1056 ((9th Cir. 2006).

Here, although plaintiff's mother's statements are rather general in nature, they corroborate plaintiff's own statements and testimony.  This is crucial given that the ALJ faulted plaintiff for not being able to verify through other evidence (apart from his testimony) his statements concerning his daily activities and cited that as a basis for rejecting his testimony as not credible.  Accordingly, the ALJ's failure to discuss these statements cannot be deemed harmless.  Taking into account the mother's statement could have affected the outcome.  This ALJ (or another) could have reached a different disability determination if plaintiff's mother's statements were credited as true or were otherwise used to "verify" plaintiff's own testimony.  Despite this error, remand for reconsideration of these third-party statements is unnecessary.  They merely reflect plaintiff's own testimony, which as discussed below, must be credited given the absence of any clear reason to reject it.[3]

Plaintiff also argues that the vocational testimony based on plaintiff's subjective symptoms and work limitations should be credited.   Here, the vocational expert testified that if plaintiff's testimony regarding his limitations were credited – that is, if he could sit for only fifteen to twenty minutes at a time, stand or walk for fifteen minutes at a time, not to exceed three hours, and had to lie down and elevate his legs at least two times a day for twenty to thirty minutes at a time – plaintiff would be unable to sustain any employment.  AR 266-68.  In light of

---

[3]  Indeed, as noted, only moments after hearing the plaintiff's testimony the ALJ stated on the record that it was credible.  AR 273.

1  this testimony, further proceedings or development of the record are unnecessary.  *Lingenfelter*,

2  504 F.3d at 1041 (remanding for payment of benefits because further proceedings were

3  unnecessary where vocational expert testified that claimant's pain and limitations would

4  eliminate any potential employment).  If there are no outstanding issues to be resolved, and it is

5  clear from the record that the ALJ would be required to find the claimant disabled if his

6  testimony were credited, the testimony should be credited as true and the case remanded for an

7  award of benefits.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1045 (9th Cir. 2007) (Beezer, J.,

8  dissenting) (citing *Smolen*, 80 F.3d at 1292); *see also McCartey v. Massanari*, 298 F.3d 1072,

9  1076-77 (9th Cir. 2002).

10         For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C.

11  § 405(g) for immediate payment of benefits.

12         Accordingly, IT IS HEREBY ORDERED that:

13         1.  Plaintiff's motion for summary judgment is granted;

14         2.  The Commissioner's cross-motion for summary judgment is denied; and,

15         3.  This action is remanded to the Commissioner for immediate payment of benefits.

16  DATED:  September 17, 2008.

         EDMUND F. BRENNAN
         UNITED STATES MAGISTRATE JUDGE